```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
                     PENSACOLA DIVISION
```

SONDRA WYNN,

    Plaintiff,

v.                                          Case No.

DAVISON DESIGN & DEVELOPMENT,     **PLAINTIFF DEMANDS TRIAL BY**
INC.,                                 **JURY ON ALL CLAIMS SO TRIABLE**

    Defendant.

_____/

## COMPLAINT

Plaintiff, Sondra Wynn, brings this action against defendant, Davison Design & Development, Inc. ("Davison"), and alleges:

### Allegations Common to all Counts

1.  Plaintiff is a citizen and resident of Santa Rosa Beach, Florida.

2.  Defendant is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Pittsburgh, Pennsylvania.

3.  Jurisdiction exists in this Court pursuant to 28 U.S.C. secs. 1331 and 1367(a) because this case involves a claim that arises under the laws of the United States and the state law claims are so related to the federal claim that they form part of the same case or controversy. Jurisdiction also exists pursuant to 28 U.S.C. sec. 1332(a)(1) because this case is

between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. At all material times, Ms. Wynn has been in the business of wedding planning.

5. It is common for the bride and her wedding party to carry a bouquet of flowers during the wedding ceremony and also during photographs taken in connection with a wedding. However, it is often difficult to use bouquets of actual, long-stemmed flowers for these purposes because some types of flowers preferred by brides do not maintain their freshness for extended periods of time outside of water.

6. In the late 1990's or early 2000's, Smithers-Oasis Company ("Smithers") began marketing a patented bouquet holder. A copy of U.S. Patent No. 5,927,002 ("the '002 Patent") describing this product is attached as Exhibit A. The '002 Patent claims a product that creates the illusion that a person is holding a bouquet of long-stemmed flowers. In fact, however, the stems have been cut and each end placed into a wettable foam mass, thus extending the life and freshness of the flowers.

7. Ms. Wynn was familiar with and used the Smithers bouquet holder in planning weddings.

8. In or around 2001, Ms. Wynn (then known as Sondra Casey) conceived an idea for a bouquet wrap for use with the Smithers bouquet holder. The wrap designed by Ms. Wynn circumscribed the bouquet holder and was fastened with Velcro. Ms. Wynn designed the wrap to be comprised of various fabrics and bows in order to provide a more finished and decorative

"look" to the Smithers bouquet holder, which was made of a simple piece of white plastic.

9. Ms. Wynn developed several prototypes of the bouquet wrap and contacted Davison about the possibility of promoting her invention by assisting in patenting, marketing or licensing the product that she had conceived.

10. In or around April 2003, Ms. Wynn and Davison entered a contract for invention promotion services. Pursuant to the contract, Ms. Wynn retained Davison, inter alia, to file in her name disclosure documents with the United States Patent and Trademark Office ("PTO"), perform a research patent search for product design purposes only, perform a project related data search, and compile all data into a professional business format. As part of the contract, Davison specifically agreed to maintain the confidentiality of Ms. Wynn's conception and to refrain from nonconfidential disclosures. Attached as Exhibit B is an excerpt from Davison's project summary acknowledging the contractual relationship and Ms. Wynn's conception of the bouquet wrap product.

11. Notwithstanding that Ms. Wynn hired Davison to promote her bouquet wrap invention, beginning in early 2004 Davison began directing Ms. Wynn's efforts toward the design of a modified version of the Smithers bouquet holder. Ms. Wynn provided Davison several ideas for such a modified design, including implementation of a cone shape (as opposed to a cylindrical shape) for easier carrying, and implementation of a

"lip" at the top of the device to prevent water from the foam from spilling over to the outside of the holder.

12. Davison continued to focus its efforts on the modified bouquet holder throughout 2004 and 2005. Ultimately, in approximately August 2005, Davison presented Ms. Wynn with various prototypes and marketing materials relating to the modified bouquet holder, which Davison dubbed the "Easy Grip." During this time, Davison devoted little, if any, work or effort toward development of Ms. Wynn's primary conception, which was the unique bouquet wrap.

13. In December 2007, Ms. Wynn visited a wholesale store in order to purchase various supplies for a wedding she was planning that weekend. While in the store, Ms. Wynn saw on the shelf, and purchased for $8.00, a direct copy of the bouquet wrap she had presented to Davison in 2003. The bouquet wrap purchased by Ms. Wynn was and continues to be sold by Smithers, doing business as "Oasis Floral."

14. On information and belief, Davison disclosed Ms. Wynn's bouquet wrap idea to Smithers, in violation of the confidentiality provisions of its contract with Ms. Wynn. In this regard, a design research package provided to Ms. Wynn by Davison includes a copy of the '002 Patent. Thus, Davison knew and was aware of Smithers' involvement in the floral bouquet market and its potential interest in Ms. Wynn's bouquet wrap.

15. On information and belief, Smithers has sold Ms. Wynn's bouquet wraps, at a price of approximately $8.00 per wrap, on a nationwide or worldwide basis since at least 2007.

4

Ms. Wynn believes that revenues from her bouquet wrap during this time may be in the hundreds of thousands, if not millions of dollars.

16. Ms. Wynn has retained the undersigned attorneys to represent her in this action and is obligated to pay said attorneys a reasonable fee.

## Count I:  Breach of Contract

17. Plaintiff restates and incorporates as if fully set forth herein paragraphs 1 through 16 of this Complaint.

18. Davison breached its contract with Ms. Wynn by failing to provide any or all of the services it promised to provide under the contract.  Specifically, Davison essentially ignored the bouquet wrap idea and instead focused its efforts on a modified version of the Smithers bouquet holder.

19. Davison also breached the confidentiality provisions of its contract with Ms. Wynn by disclosing to Smithers, or others in contact with Smithers, Ms. Wynn's conception for the bouquet wrap, without Ms. Wynn's knowledge or consent.

20. Any conditions precedent to the maintenance of the claims alleged herein have been met, waived, discharged, performed, excused, or have occurred.

21. Ms. Wynn suffered damages caused by defendant's breach of the contract including, but not limited to:  (a) lost time in patenting, marketing, selling or licensing the bouquet wrap, thereby preventing Ms. Wynn from realizing the revenues that ultimately accrued to Smithers; and/or (b) depriving Ms. Wynn of royalties, license fees or other compensation justly belonging

to her by licensing or otherwise disclosing to Smithers, in violation of the contractual confidentiality provisions and for its own benefit and profit, Ms. Wynn's bouquet wrap product.

### Count II:  Violation of 35 U.S.C. §297

22. Plaintiff restates and incorporates as if fully set forth herein paragraphs 1 through 16 of this Complaint.

23. At all material times, Davison is and has been an invention promoter within the meaning of 35 U.S.C. § 297(c)(3).

24. Ms. Wynn was a customer of Davison under the meaning of 35 U.S.C. § 297(c)(2).

25. Ms. Wynn and Davison entered into a contract whereby Davison was to provide invention promotion services within the meaning of 35 U.S.C. § 297(c)(4).

26. Prior to entering into the contract for invention promotion services, Davison did not disclose to Ms. Wynn in writing the total number of inventions evaluated by defendant for commercial potential in the previous five years, nor did it disclose the number of those inventions that received positive evaluations, or the number of those inventions that received negative evaluations.

27. Prior to entering into the contract for invention promotion services, Davison did not disclose to Ms. Wynn in writing the total number of customers who had contracted with defendant during the previous five years.

28. Prior to entering into the contract for invention promotion services, Davison did not disclose to Ms. Wynn in writing the total number of customers known by defendant to have

6

received a net financial profit as a direct result of the invention promotion services provided by defendant.

29. Prior to entering into the contract for invention promotion services, Davison did not disclose to Ms. Wynn in writing the total number of customers known by defendant to have received license agreements for their inventions as a direct result of the invention promotion services provided by defendant.

30. Prior to entering into the contract for invention promotion services, Davison did not disclose to Ms. Wynn in writing the names and address for all previous invention promotion companies with which defendant or its officers had collectively or individually been affiliated during the previous ten years.

31. Plaintiff is informed and believes and on that basis alleges that, to the extent and if any disclosure was made with respect to the matters mentioned in paragraphs 26, 27, 28, 29 and 30, such information was inaccurate, false and misleading.

32. Plaintiff is informed and believes and on that basis alleges that, to the extent and if any disclosure was made with respect to the matters mentioned in paragraphs 26, 27, 28, 29 and 30, such information was orally dismissed and mentioned as irrelevant.

33. As a direct result of the failures to disclose and/or provision of inaccurate, false, and misleading information, as mentioned in paragraphs 26, 27, 28, 29, 30, 31 and 32, plaintiff was induced to pay at least $8,000.00 to defendant.

34. As a direct result of the failures to disclose and/or provision of inaccurate, false and misleading information, as mentioned in paragraphs 26, 27, 28, 29, 30, 31 and 32, plaintiff has been damaged by the loss of time in patenting marketing and selling plaintiff's bouquet wrap product.

35. Plaintiff is informed and believes and on that basis alleges that Davison took the actions herein discussed intentionally, willfully and with the purpose of deceiving plaintiff.

### Count III:   Unjust Enrichment

36. Plaintiff restates and incorporates as if fully set forth herein paragraphs 1 through 16 of this Complaint.

37. On information and belief, Davison (or its predecessors) had access to and knowledge of Ms. Wynn's conceptions and ideas and communicated those ideas to Smithers or persons in contact with Smithers, likely in exchange or a license fee or some other compensation.

38. As a direct and proximate result of the use and misappropriation of Ms. Wynn's ideas for the bouquet wrap product, without identifying Ms. Wynn as the true inventor, Davison has been unjustly enriched.

### Prayer for Relief

For relief, plaintiff, Sondra Wynn, prays that this Court enter judgment in her favor and against defendant granting plaintiff the maximum relief allowed by law, including, but not limited to:

1.  Judgment in favor of plaintiff and against defendant for plaintiff's actual damages according to proof;

2.  Judgment in favor of plaintiff for statutory damages and/or treble damages based upon defendant's violation of 35 U.S.C. sec. 297;

3.  Judgment in favor of plaintiff requiring defendant to account for all gains, profits, and advantages derived from its wrongful acts and other violations of law;

4.  Disgorgement to plaintiff of any past, present or future monies received or to be received for any license or assignment of any inventions in whole or in part conceived by plaintiff and regarding which defendant has been unjustly enriched;

5.  An award of plaintiff's attorneys' fees and costs in prosecuting this action pursuant to 35 U.S.C. sec. 297; and

6.  Such other relief as the Court deems just and equitable.

>Respectfully submitted,
>
>AUSLEY & McMULLEN, P.A.
>
>/s/Martin B. Sipple_____
>   Martin B. Sipple
>   Fla. Bar No. 0135399
>   227 South Calhoun Street
>   P.O. Box 391 (zip 32302)
>   Tallahassee, Florida 32301
>   (850) 224-9115 – telephone
>   (850) 222-7560 – facsimile
>
>Attorneys for Plaintiff